**2008 BNH 007**

_____

### UNITED STATES BANKRUPTCY COURT
### DISTRICT OF NEW HAMPSHIRE

In re:                                                    Bk. No. 07-10963-JMD
                                                          Chapter 13
Joy A. Chase,
        Debtor

_Krista E. Atwater, Esq._
_Atwater Law_
_Rye, New Hampshire_
_Attorney for Debtor_

_William J. Amann, Esq._
_Ablitt & Charlton, P.C._
_Stoneham, Massachusetts_
_Attorney for Creditor_

## MEMORANDUM OPINION

## I.  INTRODUCTION

Joy Chase (the "Debtor") filed an objection (Doc. No. 14) (the "Objection") to Proof of

Claim 1 (the "Original Claim") filed by "AMC Mortgage Services, Inc., dba Delaware AMC

Mortgage Services, Inc., as loan servicer for Ameriquest Mortgage Company" (the "First

Creditor").[1]  In the Objection, the Debtor contends that (1) the documentation attached to the

Original Claim does not establish a prima facie claim of a security interest in her residence due

to the failure to comply with applicable state law regarding the encumbrance of real estate and

---

[1]  The Court notes that a corporation is a legal entity authorized by law to act as a legal person distinct from the individuals or corporate persons who make up its officers, directors and shareholders. The abbreviation "dba" (or more properly "d/b/a" or "d.b.a.") is used after the name of a legal person, whether an individual or a corporation, to designate that person's assumed business name.  Accordingly, a designation that a person is doing business as a corporation is a legal non sequitur.  However, the proper name of the First Creditor is not material to the analysis in this opinion.

homesteads; and (2) the Original Claim is contrary to a final ruling by the New Hampshire

Supreme Court in <u>Chase v. Ameriquest Mortgage Co.</u>, 155 N.H. 19 (2007), which involved the

same claim.  On October 5, 2007, the Court ordered CitiResidential Lending Inc., as servicer for

WM Specialty Mortgage, LLC (the "Creditor")[2] to file an amended proof of claim and ordered

the parties to file a joint stipulation of facts, all by November 16, 2007.  The Debtor was ordered

to file any responsive memorandum on or before December 14, 2007.  On November 21, 2007,

the Creditor filed an amended Proof of Claim 1 (the "Claim").  The parties subsequently filed

memoranda of law and the Court held oral argument on January 3, 2008.

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§

1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States

Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.).

This is a core proceeding in accordance with 28 U.S.C. § 157(b).


## II.  FACTS

There is no material factual dispute between the parties.  The Debtor and her ex-husband,

George Chase, purchased a home at 55 Main Street in Rumney, New Hampshire in August 1996.

On or about November 28, 1997, using their home as collateral, they executed a mortgage note

and deed to United Companies Lending Corporation in the original principal amount of

$71,300.00 (the "Prior Mortgage").[3]  On or about April 10, 2002, again utilizing the home as

---

[2]  After the Original Claim was filed the rights to that claim were assigned to the Creditor.  <u>See</u> the notice of transfer of claim dated January 30, 2008, which was filed on February 4, 2008 (Doc. No. 45).

[3]  The Prior Mortgage was recorded in the Grafton County Registry of Deeds at Book 2287, Page 38.  A copy of that mortgage was attached to the Claim as an exhibit.

collateral, Mr. Chase entered into a mortgage with Ameriquest (hereinafter referred to as

"AMC") in the amount of $90,000.00 (the "Current Mortgage").[4]  As part of the mortgage

agreement, AMC paid off the Prior Mortgage at the April 2002 closing.  The Prior Mortgage was

subsequently discharged.[5]

       The parties stipulated in the New Hampshire court proceedings and in this Court that Mr.

Chase forged the Debtor's name when he executed the Current Mortgage.  When AMC

commenced foreclosure proceedings in the Spring of 2005, the Debtor sought to enjoin the

foreclosure sale.  The superior court ruled that the Current Mortgage constituted a charge on the

Debtor's homestead and that the doctrines of equitable subrogation and unjust enrichment

required the Debtor to pay the holder of the Current Mortgage $74,439.78, the amount of the

payoff of the Prior Mortgage.  The Debtor appealed that decision to the New Hampshire

Supreme Court.

       In its decision of February 21, 2007, the New Hampshire Supreme Court reversed the

superior court, in part, and held that the Current Mortgage could not constitute a legal charge on

the Debtor's interest in her residence for two reasons.  Chase, 155 N.H. at 23.  First, the court

found that the Current Mortgage did not satisfy the requirement under New Hampshire law, NH

RSA 477:3, for the execution of a conveyance of a lien on the Debtor's interest in real estate

because she had not signed the document.  Id. at 22.  Second, the court held that the Current

Mortgage could not constitute a charge on the Debtor's homestead interest because she had not

---

    [4]  The Current Mortgage was recorded in the Grafton County Registry of Deeds at Book 2666, Page 119.

    [5]  The discharge of the Prior Mortgage was recorded in the Grafton County Registry of Deeds at Book 2671, Page 119.

signed the document as required by NH RSA 480:5-a.  Id. at 23.  However, the court did uphold

the equitable subrogation ruling by the superior court.  Id. at 28.  The court found that the

superior court had correctly ruled that the First Creditor had established all of the necessary

elements of a claim for equitable subrogation to the rights of the holder of the Prior Mortgage.

Id. at 27-28.  Therefore, the equitable subrogation claim was determined to be $74,439.78.

The Debtor filed her petition under chapter 13 of the Bankruptcy Code[6] on May 10, 2007

(the "Petition Date").  In schedule C, the Debtor claimed exemptions for the full value of her

home under NH RSA 480:1 ($100,000.00) and NH RSA 511:2(XVIII) ($3,900.00).  No timely

objections to the exemption claims were filed.

The First Creditor filed the Original Claim on May 30, 2007.  In the Original Claim the

First Creditor alleged that it held a secured claim on the Debtor's residence in the amount of

$138,523.82 and a prepetition secured arrearage in the amount of $49,249.04.  The Objection

challenged both the amount and the secured status of the Original Claim against her homestead.

After the Creditor then filed the Claim, the Claim became the obligation that is the subject of this

dispute.


**III. DISCUSSION**

The Debtor claims that she is not attempting to re-litigate the New Hampshire Supreme

Court's Chase decision.  Rather she is contesting the Creditor's claim of entitlement to treatment

as a secured creditor in this bankruptcy proceeding.  The Debtor argues that the Creditor cannot

---

[6]  In this opinion the terms "Bankruptcy Code," "section" and "§" refer to title 11 of United States Code, 11 U.S.C. § 101 et seq., as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8.

claim status as a secured creditor because it never perfected the equitable subrogation claim awarded to it in the state courts.  The Debtor argues that the <u>Chase</u> decision holds that the Current Mortgage is not a charge upon any interest she has in her home and, because the Prior Mortgage is discharged of record, the Creditor's equitable subrogation claim is unperfected.  The Debtor contends that the Creditor should have recorded a *lis pendens* or a copy of one or both of the state court decisions or orders to perfect its equitable subrogation claim.  Absent such perfection, the Debtor argues that the Creditor's claim must be treated as an unsecured claim because 11 U.S.C. § 522(h) permits the Debtor, under the circumstances of this case, to exercise the rights of a trustee under 11 U.S.C. § 544(a)(3).  The Creditor disputes the Debtor's contention.  The Creditor's argument rests on the decision in <u>Chase</u> which equitably subrogated its rights to the holder of the Prior Mortgage, thereby giving it a lien in the same priority as the Prior Mortgage.[7]

### A.  The Procedural Posture of the Objection

Based upon the undisputed factual record before the Court, the record title in the Grafton County Registry of Deeds on the Petition Date disclosed the discharged Prior Mortgage and the Current Mortgage.  As such, the Current Mortgage was the only document of record claiming a lien against the Debtor's residence and it appeared on its face to be properly executed.  However, the New Hampshire Supreme Court held that the Current Mortgage did not constitute a charge against the Debtor's interest in her residence, or her homestead, because as a matter of law it had not been executed in accordance with the statutory formalities.  <u>Chase</u>, 155 N.H. at 22-23.

---

[7]  Neither party raised any issue in this contested matter regarding the validity of the Current Mortgage against the interest of the Debtor's former spouse in the residence.  This issue apparently was not raised before the New Hampshire Supreme Court.

Therefore, the Current Mortgage does not properly encumber any of the Debtor's interests in her residence, as a matter of law.

The Debtor's standing to raise the Objection is based on the provisions of § 522(h) which permit a debtor in the circumstances of this case to avoid a transfer of property under § 544 of the Bankruptcy Code if a trustee could do so. Section 544(a) permits a trustee to avoid a transfer of property that is voidable by a hypothetical lien creditor or a bona fide purchaser of property (a "BFP"). The rights and priorities of a trustee as a hypothetical lien creditor or BFP are determined under applicable state law. Robinson v. Howard Bank (In re Kors, Inc.), 819 F.2d 19, 22-23 (2d Cir. 1987) (trustee as lien creditor under § 544(a)(1)); In re Cushman Bakery, 526 F.2d 23, 30 (1st Cir. 1975) (trustee as BFP under predecessor of § 544(a)(3)).

An objection to a claim is ordinarily a contested matter in bankruptcy court. See Fed. R. Bank. P. 9014.[8] At the time the Objection was filed, Rule 3007 provided that if an objection to claim included a demand for relief of the kind specified in Rule 7001, it would become an adversary proceeding.[9] A proceeding to avoid a lien under § 544 of the Bankruptcy Code is an adversary proceeding under Rule 7001(3). Although objections to claims are contested matters, they are, unless the Court orders otherwise, governed by many of the disclosure and discovery rules applicable in adversary proceedings. Fed. R. Bankr. P. 9014. At oral argument, the parties agreed that the Court could consider the matter without converting it to an adversary proceeding as they had agreed to a stipulated factual record and had had an opportunity to brief and argue the legal issues. No party objected to the Court hearing the Objection as a contested matter, all

---

[8] In this opinion, the word "Rule" shall mean the Federal Rules of Bankruptcy Procedure.

[9] Effective December 1, 2007, Rule 3007 was amended to prohibit the inclusion of a demand for relief of a kind specified in Rule 7001 in an objection to claim. See Fed. R. Bankr. P. 3007(b).

parties had adequate notice of the hearing and the Creditor has not been prejudiced by treating

the Objection as a contested matter.  Accordingly, the Court shall do so.  See Fleet Nat'l Bank v.

Valente (In re Valente), 360 F.3d 256, 265 (1st Cir. 2004) (holding that, although the matter

should have been initiated by a complaint rather than a motion, the debtor was not prejudiced by

proceeding as a contested matter).

### B.  Constructive Notice and Record Title to Real Estate

For purposes of perfecting liens and interests in real estate, New Hampshire is a "race-

notice" jurisdiction.  Amoskeag Bank v. Changnon, 133 N.H. 11, 14 (1990).  In a race-notice

jurisdiction,

> a purchaser or creditor has the senior claim if he or she records
> without notice of a prior unrecorded interest.  The purpose then of
> the recording statutes . . . is to provide notice to the public of a
> conveyance of or encumbrance on real estate.  The statutes serve to
> protect both those who already have interests in land and those
> who would like to acquire such interests.

Id.  Two principles underlying the statutory recording scheme in New Hampshire apply to this

case.

> First, all purchasers or creditors are held to be constructively
> notified of any properly recorded interest, whether or not the
> purchaser or creditor actually performs a title search. . . . Second,
> even if no recording of a prior interest is made, a subsequent
> purchaser or creditor cannot have a senior claim to the real estate if
> he or she has actual notice of the interest at the time the subsequent
> claim is recorded.

Id.

Although the Debtor had actual knowledge of the Chase decision, the Bankruptcy Code

directs the Court not to consider "any knowledge of the trustee or any creditor" in an avoidance

action.  11 U.S.C. § 544(a).  Under New Hampshire law, a BFP acquires knowledge of a possible

7

interest in real estate even when an improper document is recorded in the registry of deeds.

Chagnon, 133 N.H. at 15.  In this case, the Current Mortgage was of record and although it was

not properly executed, it would serve to place a BFP on inquiry notice of a possible claim by the

Creditor.  Investigation of that claim would have easily lead to knowledge of the equitable

subrogation claim held by the Creditor under the Chase decision.  Accordingly, a trustee

standing in the shoes of a hypothetical BFP would have constructive notice of the unrecorded

Claim and could not avoid the equitable subrogation interest of the Creditor under § 544(a)(3).

However, New Hampshire law places a different burden on attaching creditors.  An

attaching creditor may simply rely on the record in the registry of deeds.  Id.  "Thus an attaching

creditor can have actual notice of a prior interest only if he or she discovers a *properly* recorded

interest during a title search or independently learns of the existence of the interest."  Id.

(emphasis in the original).  In Chagnon a second mortgage had been properly executed under

state law, but the recorded copy did not include the page containing the acknowledgment of the

mortgagor.  The New Hampshire Supreme Court held that the mortgage was not properly

recorded and as such did not provide actual or constructive notice to the junior attaching

creditors.  Therefore, the attachments were held to be senior to the mortgage.  Id. at 16.

In this case, the Current Mortgage has been found not to have been properly executed

and, therefore, not to be a legal charge on the interests of the Debtor in her residence.  Chase,

155 N.H. at 22-23.  Therefore, it could not provide actual or constructive notice to an attaching

creditor of a possible claim or interest in the residence by the Creditor.  See Chagnon, 133 N.H.

at 16.  Although the Creditor was equitably subrogated to the rights of the holder of the Prior

Mortgage for a portion of its claim,[10] the Prior Mortgage had been discharged of record prior to the Petition Date by a properly recorded discharge.  A properly recorded discharge of a mortgage provides notice to subsequent purchasers and creditors of the release of an interest in real estate not a claim of an interest in the real estate.

### C.  Effect of the Intervention of Equity

The Creditor argues that as a matter of state law, the decision in <u>Chase</u> provides it with an interest in the Debtor's residence in the same priority as the holder of the Prior Mortgage and in the amount the Creditor paid for the discharge of that mortgage.  It is undisputed that the decision in <u>Chase</u> is a final determination of the highest court in the State of New Hampshire affirming the Creditor's equitable subrogation right to the interest of the First Creditor in the Prior Mortgage.  There is no question that state courts may equitably revive discharged mortgages.  <u>Caron v. Manchester Fed. Sav. & Loan Ass'n</u>, 90 N.H. 560, 566-67 (1940) (trial court could grant priority to that portion of the bank's loan secured by a junior mortgage which was used to discharge the senior mortgage if the intervening creditor and the bank understood that such a result was intended); <u>Int'l Trust Co. v. Davis & Farnum Mfg. Co.</u>, 70 N.H. 118, 119 (1900) (equity may intervene to correct a mistake and produce the intended result when the rights of third parties will not be affected).  However, none of the state court orders establishing the Creditor's right to equitable subrogation have been recorded.

---

[10]  <u>Chase</u>, 155 N.H. at 28.

9

### D.  Perfection of Interests in Real Estate

Whether an interest in real estate is acquired by consensual agreement or by court order, it must be recorded in the appropriate registry of deeds if it is to have effect against subsequent purchasers and creditors.  New Hampshire law requires:

> Every deed or other conveyance of real estate and *every court order* or other instrument which affects title to any interest in real estate, except probate records and tax liens which are by law exempt from recording, *shall be recorded at length* in the registry of deeds in the county or counties in which the real estate lies and *such . . .court order* or instrument *shall not be effective as against bona fide purchasers for value until so recorded.*

NH RSA 477:3-a (emphasis added); State v. Tallman, 139 N.H. 223, 225 (1994) (recording of an easement puts subsequent owners on notice of the easement and imposes a duty to make inquiry to discover the extent and effect of the easement); Smith v. Wedgewood Builders Corp., 134 N.H. 125, 131 (1991) (recording of a right of first refusal created an equitable restriction binding on subsequent purchasers); but see Lewis v. Shawmut Bank, N.A., 139 N.H. 50, 51 (1994) (mechanic's liens are an exception to the general priority rule in a race-notice jurisdiction).

It is undisputed that the Creditor's interest in the Debtor's residence was established through a right to equitable subrogation awarded to it through one or more orders of the superior court and the New Hampshire Supreme Court.  It is also undisputed that none of those orders were recorded in the Grafton County Registry of Deeds as of the Petition Date.  Therefore, the Creditor's claim of equitable subrogation to the rights of the holder of the First Creditor under the Prior Mortgage, obtained through one or more state court orders, is not binding on subsequent attaching creditors because it was not recorded and the Creditor's interest in the

Debtor's residence can be avoided by a trustee standing in the shoes of a hypothetical lien creditor under § 544(a)(1) of the Bankruptcy Code.

## IV.  CONCLUSION

For the reasons stated above, the Debtor's objection to the Creditor's claim of a security interest in the Debtor's residence shall be sustained and the Claim shall be allowed as a general unsecured claim in the amount of $74,439.78.  This opinion constitutes the  Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. The Court will issue a separate order consistent with this opinion.

ENTERED at Manchester, New Hampshire.


Date:   June 3, 2008                              /s/ J. Michael Deasy
                                                  J. Michael Deasy
                                                  Bankruptcy Judge

11